ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| JULIO HIRAM JUSINO PACHECO  Apelado  v.  LLCR, CORPORATION h/n/c PRO AUTO, LUIS E. CORDOVA BENITEZ CASADO CON JENNY DOE Y LA SOCIEDAD DE BIENES GANANCIALES, JENNY DOE CASADA CON LUIS E. CORDOVA BENITEZ Y LA SOCIEDAD DE BIENES GANANCIALES, LA SOCIEDAD DE BIENES GANANCIALES CONSTITUIDA POR LUIS E. CORDOVA BENITEZ Y JENNY DOE, Y EDISON RODRIGUEZ  Apelante | **TA2025AP00294** | *Apelación* se acoge como *Certiorari* procedente del Tribunal de Primera Instancia Sala Superior de Mayagüez  Civil Núm. MZ2023CV00922  Sobre: Acción Civil & Rescisión de Contrato |
|---|---|---|

Panel integrado por su presidenta la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 2 de octubre de 2025.

Comparece ante este foro LLCR Corp. h/n/c Pro Auto (Pro Auto), Luis Enrique Córdova Benítez (señor Córdova) y Edison Rodríguez (señor Rodríguez) (en conjunto, "parte peticionaria"), y nos solicita que revoquemos una *Sentencia Sumaria Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Cabo Rojo, notificada el 21 de mayo de 2025. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* la *Sentencia Sumaria Parcial* presentada por Julio Hiram Jusino Pacheco (señor Jusino o "el recurrido") el 3 de marzo de 2025. En consecuencia, le ordenó a Pro Auto a que pagara

la suma de doce mil setecientos dólares ($12,700.00) más los intereses legales prevalecientes (8.75%), así como la devolución del vehículo tomado en concepto de "*trade-in*".

Examinada la naturaleza del recurso, lo acogemos como *certiorari* y autorizamos que retenga su actual identificación alfanumérica.

Por los fundamentos que expondremos a continuación, **DENEGAMOS** expedir el auto de *certiorari*.

## I.

El 1 de junio de 2023, el señor Jusino presentó una *Demanda* sobre rescisión contra Pro Auto, el señor Córdova, y el señor Rodríguez.[1] Mediante esta, esbozó que, el 5 de mayo de 2023, se personó a Pro Auto, donde fue atendido por el señor Rodríguez quien le mostró el vehículo 2018 Kia Río Sedan Color Rojo – VIN:3KPA24AB4JE076352 – TABLILLA: IYV-726. Indicó que, el precio total de dicho vehículo era de quince mil setecientos dólares ($15,700.00). Sostuvo que Pro Auto tomó en concepto de "*trade-in*" el vehículo 1997 Toyota Camry CE/LE/XLE NEGRO – VIN:4T1BG22KXVU98559 – REGISTRO:5232957 – TABLILLA: COC498. Adujo que, Pro Auto valoró dicho "*trade-in*" por la suma de tres mil dólares ($3,000.00). Ante ello, sostuvo que se determinó que el balance a pagar era de doce mil setecientos ($12,700.00) y que dicho balance había sido liquidado en su totalidad mediante cheque de gerente a nombre de Pro Auto. Expresó que, el 15 de mayo de 2023, devolvió el vehículo Kia Río Sedan a Pro Auto por razones de insatisfacción debido a que el vehículo no poseía las

---

[1] *Demanda*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

cualidades prometidas. Añadió que, notificó al señor Rodríguez y al señor Córdova personalmente sobre la devolución. Indicó que, solicitó la restitución de los doce mil setecientos ($12,700.00) y del vehículo que fue tomado en "*trade-in*". Sostuvo que el señor Córdova se negó a lo anterior. Ante ello, alegó que notificó, mediante correo postal certificado, una comunicación escrita dirigida a Pro Auto en la cual manifestaba que estaba solicitando la rescisión del contrato, lo cual conllevaba la devolución de los doce mil setecientos dólares ($12,700.00) y del vehículo tomado en "*trade-in*". No obstante, indicó que Pro Auto ha retenido el vehículo tomado en "*trade-in*" y la suma de dinero solicitada. Asimismo, resaltó que tampoco tiene el vehículo Kia Río Sedan en su poder. Adujo que la inacción por parte de los peticionarios, le ha generado angustias mentales, sufrimientos, y preocupaciones recurrentes. Por lo anterior, solicitó que se declarara *Ha Lugar* la *Demanda*, y ordenara la rescisión del contrato de compraventa. Finalmente, solicitó la devolución de los doce mil setecientos ($12,700.00), más los intereses legales correspondientes, y del vehículo que Pro Auto tomó como "*trade-in*". Además de cinco mil setecientos dólares ($5,700.00) por las angustias mentales, sufrimientos y preocupaciones recurrentes, así como la suma de cinco mil dólares ($5,000.00) por concepto de honorarios de abogado.

En respuesta, el 3 de agosto de 2023, los peticionarios presentaron su *Contestación a Demanda*.[2] En esta, alegaron que, de conformidad con los términos

---

[2] *Contestación a Demanda*, entrada núm. 11 en SUMAC.

de la garantía, el señor Jusino llevó el vehículo al taller para una reparación. Sostuvieron que, cuando lo llamaron para que pasara a recoger el vehículo, se negó y pretendió deshacer el negocio jurídico llevado a cabo el 5 de mayo de 2023. Expresaron que, ello resulta improcedente ya que nuestro ordenamiento jurídico dispone que reparaciones menores a un vehículo de motor, máxime cuando están cubiertas por la garantía, no constituyen justificación para dejar sin efecto un contrato de compraventa. Por otro lado, alegaron que como ente jurídico, es distinto a sus accionistas, empleados, funcionarios y directores. Por ello, manifestaron que el señor Córdova y el señor Rodríguez actuaron en calidad de presidente y vendedor de Pro Auto, respectivamente. Por lo tanto, enfatizaron que ninguno tiene responsabilidad en su carácter personal por los daños reclamados en la *Demanda*.

Asimismo, la parte peticionaria instó una *Reconvención* mediante la cual adujo que el vehículo entregado en "*trade-in*" fue vendido a un tercero.[3] No obstante, indicó que la registración de titularidad a favor de ese tercero no ha podido efectuarse debido a que el señor Jusino promovió la anotación de un embargo de litigio al vehículo en el Departamento de Transportación y Obras Públicas. Alegó que, la actuación del señor Jusino constituyó un incumplimiento con sus obligaciones contractuales. Sostuvo que dicha anotación de embargo le ha ocasionado daños en lo relativo a la imagen de la empresa, así como exponerlos a ser demandados en daños y perjuicios. Por ello, que

---

[3] *Reconvención*, entrada núm. 11 en SUMAC.

los daños sufridos como consecuencia de la actuación del señor Jusino se valoran en una suma no menor de quince mil dólares ($15,000.00). Por todo lo anterior, solicitó que se declarara *No Ha Lugar* a la *Demanda* y ordenara el pago de las costas, gastos, y honorarios de abogado en concepto de temeridad. Asimismo, solicitó que se declarara *Ha Lugar* la *Reconvención* presentada y ordenara el pago de los daños reclamados, así como las costas, los gastos, y honorarios de abogado por concepto de temeridad.

Posteriormente, el 3 de agosto de 2025, el señor Jusino presentó una *Réplica a la Reconvención*.[4] En esencia, negó las alegaciones formuladas en la *Demanda* y solicitó que declarara *Ha Lugar* la *Demanda* y condenara a los peticionarios al pago o devolución de los doce mil setecientos dólares ($12,700.00) y la devolución del vehículo tomado en "trade in". Asimismo, solicitó el pago de cinco mil setecientos dólares ($5,700.00) por concepto de angustias mentales, sufrimiento y preocupaciones constantes, así como una suma por concepto de honorarios de abogado, gastos, costas e intereses legales a partir de la radicación de la presente causa de acción por la temeridad exhibida.

El 3 de marzo de 2025 el recurrido presentó una *Solicitud de Sentencia Sumaria Parcial*.[5] En particular, alegó que el negocio de compraventa quedó perfeccionado mediante factura. Adujo que, la factura de compraventa es la ley entre las partes y contempla la rescisión del contrato de compraventa. En específico, señaló que la

---

[4] *Réplica a la Reconvención*, entrada núm. 12 en SUMAC.
[5] *Solicitud de Sentencia Sumaria Parcial*, entrada núm. 51 en SUMAC.

correspondiente cláusula o política contemplada en la factura, leía como sigue:

> [e]n la eventualidad de que el vehículo de motor comprado sea entregado al comprador y el negocio jurídico aquí estipulado sea resuelto y/o terminado por acuerdo mutuo entre las partes contratantes y/o el préstamo a ser extendido al amparo del contrato de venta condicional para la compra del vehículo de motor no quede debidamente perfeccionado, el comprador expresamente autoriza el vendedor a re-poseer, sin necesidad de notificación, comunicación o intervención judicial previa, el vehículo de motor objeto de la presente orden de compra y, además, se compromete y obliga a pagarle al vendedor y/o autoriza el vendedor a retener de cualquier suma acreditada por concepto de trade in o entregada por concepto de pronto pago la cuantía de noventa y cinco (.95) centavos por milla recorrida.

Asimismo, resaltó que de los hechos materiales incontrovertidos surgió que el señor Rodríguez, vendedor, guardó silencio en cuanto a las condiciones del vehículo. Indicó que, debido al engaño que se le indujo sobre las cualidades del vehículo, tuvo la obligación de rescindir el contrato perfeccionado. A su vez, que las cualidades del vehículo de motor no cumplieron con sus expectativas y no demostró lo representado inicialmente por el señor Rodríguez. Así pues, que el vehículo de motor se encontraba imposibilitado de conducirse. Ante tales circunstancias, solicitó se declarara *Ha Lugar* la *Solicitud de Sentencia Sumaria*.

Transcurrido el término para que los peticionarios presentaran su oposición a la solicitud de sentencia sumaria, el 21 de mayo de 2025, el foro primario emitió una *Sentencia Parcial*.[6] Mediante el referido dictamen, el foro primario dispuso que había quedado establecido que el vehículo no estaba en condiciones idóneas. Ante ello, señalaron que el propio contrato de compraventa

---

[6] *Sentencia Parcial*, entrada núm. 58 en SUMAC.

perfeccionado por las partes, entiéndase la factura, preveía y contemplaba la rescisión. Sin embargo, expresó que los peticionarios no la pusieron en vigor cuando fue requerida por el señor Jusino. Ante tales circunstancias, el foro primario declaró *Ha Lugar* la *Solicitud de Sentencia Sumaria Parcial* presentada por el señor Jusino. Como consecuencia, ordenó a Pro Auto a que devolviera la suma de doce mil setecientos dólares ($12,700.00), más los intereses legales prevalecientes a razón de 8.75%, así como la devolución del vehículo de motor tomado en concepto de "*trade-in*". Asimismo, el foro primario ordenó al señor Córdova y al señor Rodríguez a la cooperación total con la presente sentencia. Dispuso que queda para ulterior disposición los daños que reclaman ambas partes. Asimismo, consignó las siguientes determinaciones de hechos:

1. LLCR Corp., ésta registrada ante el Departamento de Estado con el número 308120 y tiene capacidad jurídica para demandar y ser demandada.

2. LLCR Corp., hace negocios en la venta de vehículo usados mediante el nombre comercial Pro Auto.

3. El señor Luis Enrique Córdoba Benítez es una persona natural, fundador, presidente, primer oficial de Pro Auto, encargado de toda gestión, injerencia en determinaciones, y auto denominado dueño de los concesionarios.

4. El señor Edison Rodríguez fungió como vendedor y representante, en todo el trámite de la compraventa.

5. El 5 de mayo de 2023, Julio Jusino Pacheco y LLCR Corp. h/n/c Pro Auto, pactaron un negocio de compraventa del vehículo usado, marca Kia, del año 2018, modelo Río Sedan, color Rojo – VIN: 3KPA24AB4JE076352 – TABLILLA: IYV-726; por el precio de $15,700.00.

6. El negocio de compraventa se efectuó en el concesionario de "Lote de San Germán".

7. El negocio de compraventa quedó perfeccionado mediante factura del 5 de mayo de 2023.

8. La factura de compraventa es la ley entre las partes en el presente litigio.

9. La factura de compraventa contiene cláusulas y condiciones en su nota.

10. La factura de compraventa contempla los escenarios de recisión.

11. El negocio de compraventa quedó perfeccionado a través de las representaciones que hiciera el señor Edison Rodríguez Torres.

12. El 5 de mayo de 2023 y como parte de la transacción para comprar el vehículo Kía, Pro Auto tomo en concepto de "trade-in" el vehículo de motor marca Toyota, del año 1997, tablilla COC-498.

13. Pro Auto valoró el vehículo en "trade-in" en la suma de $3,000.00.

14. El balance por pagar de doce mil setecientos dólares ($12,700.00), el precio de venta del vehículo de motor Kía, fue liquidado en su totalidad por Julio Jusino Pacheco mediante un cheque de gerente del Banco Popular a nombre de LLCR Corp.

15. El cheque de gerente fue entregado en Pro Auto el 9 de mayo de 2023 y ese mismo día el señor Julio Jusino Pacheco informó a Pro Auto que el vehículo de motor tenía un ruido al frente.

16. En Pro Auto le informaron que regresara el 11 de mayo de 2023.

17. El 11 de mayo de 2023, el señor Julio Jusino Pacheco llevo el vehículo de motor a Pro Auto e indico las razones de su insatisfacción, las correcciones a practicarle y lo entregó.

18. Jusino Pacheco declaró bajo juramento que prácticamente no utilizó el vehículo adquirido por todas las circunstancias que notificó a los co-demandados.

19. El 11 de mayo de 2023, Pro Auto entendió, que para satisfacer al cliente, con el cambio de gomas ordenado, el alineamiento y una reparación menor, darían por satisfechos las cualidades de satisfacción y a su juicio tal reparación tornaría la determinación de culminar el contrato de compraventa en académica.

20. El 12 de mayo de 2023, el señor Julio Jusino Pacheco regresa a Pro Auto para indagar sobre el vehículo de motor y recalcar sobre la determinación de rescindir el contrato de compraventa. Tal conversación fue entre el señor. Jusino Pacheco y el señor Edison Rodríguez Torres. Constancia de este evento quedo atestiguado bajo juramento.

21. Tanto personal de Pro Auto como el señor Edison Rodríguez Torres indicaron que tal decisión había que hablarla con el dueño.

22. El dueño del concesionario es el señor Luis Enrique Córdoba Benítez.

23. El 15 de mayo de 2023, el señor Julio Jusino Pacheco notificó personalmente la rescisión del contrato de compraventa del vehículo de motor por razones de insatisfacción con las cualidades inicialmente presentadas.

24. El 15 de mayo de 2023, los demandados se negaron a poner en práctica la rescisión del contrato de compraventa.

25. El 15 de mayo de 2023, el señor Edison Rodríguez Torres le indicó al señor Julio Jusino Pacheco nuevamente que era una decisión que recaía en el dueño de Pro Auto.

26. El 15 de mayo de 2023, el señor Luis Córdova Benítez se negó a rescindir el contrato de compraventa.

27. Acto seguido, con fecha del 15 de mayo de 2023, los abogados de Julio Jusino Pacheco enviaron una carta certificada con acuse de recibo a Pro Auto para solicitar la rescisión del contrato de compraventa del vehículo.

28. El señor Julio Jusino Pacheco anotó un gravamen de litigio sobre el vehículo de motor que Pro Auto tomo en "trade in" con el objetivo de resguardar y vindicar todos los remedios extrajudiciales solicitados para que operase la rescisión.

29. El señor Luis Córdoba Benítez en todo momento se identificó como dueño de Pro Auto, se adjudicó de forma personal la totalidad de las determinaciones e indicó tener el control total del negocio.

30. El señor Jusino Pacheco tiene (68) años de edad.

31. El señor Luis Enrique Córdoba Benítez lleva (32) años en la industria de compra y venta de autos.

32. La factura de compra es redactada por Pro Auto.

33. La factura de compra es un papel pre-impreso.

34. Los co-demandados manifestaron que quienes la llenan son ellos bajo los términos y condiciones negociados con el cliente.

35. La factura contempla cláusulas y políticas redactadas por los co-demandados.

36. La factura establece que en la eventualidad de que el vehículo de motor comprado sea entregado al comprador y el negocio jurídico aquí estipulado sea resuelto y/o terminado por acuerdo mutuo entre las partes contratantes y/o el préstamo a ser extendido al amparo del contrato de venta condicional para la compra

del vehículo de motor no quede debidamente perfeccionado, el comprador expresamente autoriza el vendedor a re-poseer, sin necesidad de notificación, comunicación o intervención judicial previa, el vehículo de motor objeto de la presente orden de compra y, además, se compromete y obliga a pagarle al vendedor y/o autoriza el vendedor a retener de cualquier suma acreditada por concepto de trade in o entregada por concepto de pronto pago la cuantía de noventa y cinco (.95) centavos por milla recorrida.

37. Tanto el señor Luis Enrique Córdoba Benítez como el señor Edison Rodríguez atestiguaron que las cláusulas de rescisión existen en la factura de Pro Auto.

38. Tanto el señor Luis Enrique Córdoba Benítez como el señor Edison Rodríguez manifestaron bajo juramento que el vehículo había presentado situaciones mecánicas que intentaron corregir.

39. Los co-demandados bajo juramento indicaron que la rescisión no la pusieron en vigor.

40. Edison Rodríguez indicó que todo lo consultaba a Córdoba Benítez y que intentó tener buena comunicación con Jusino Pacheco.

En desacuerdo, el 4 de junio de 2025, la parte peticionaria presentó una *Moción de Reconsideración*.[7] En primer lugar, mencionó que la cláusula del contrato de compraventa o factura disponía que, para que el negocio jurídico fuera resuelto o terminado, debía existir un acuerdo mutuo entre los contratantes, sin embargo, que ellos no tuvieron ese interés en dar por culminado el contrato. En segundo lugar, sostuvo que el señor Jusino no tenía derecho a rescindir el contrato por insatisfacción, debido a que realizaron las reparaciones menores y el recurrido estaba obligado a aceptarlas. Finalmente, solicitaron la eliminación de determinaciones de hechos realizadas por el foro *a quo*, que no formaban parte de los hechos relevantes solicitados por el recurrido.

El 6 de junio de 2025, el señor Jusino presentó un *Escrito en Cumplimiento de Orden entrada #61 de SUMAC y*

---

[7] *Moción de Reconsideración*, entrada núm. 60 en SUMAC.

*en Oposicion a Moción de Reconsideración Entrada #60 de SUMAC.*[8] En esta, resaltó que el contrato de compraventa fue preparado por la parte peticionaria, donde este no tuvo participación. A su vez, que la cláusula señalada, validaba la rescisión o se podía catalogar como de índole unilateral. En cuanto a la aceptación de las reparaciones, reclamó que, si previo a efectuarse el negocio jurídico de compraventa hubiese conocido las condiciones, no lo habría adquirido. Por último, expresó que la sentencia parcial dictada por el foro primario contenía todos los criterios explícitos bajo la Regla 36 de Procedimiento Civil.

Evaluadas las mociones, el 29 de julio de 2025, el foro primario notificó una *Resolución Interlocutoria*, mediante la cual declaró *No Ha Lugar* a la *Solicitud de Reconsideración* de los peticionarios.[9]

Aun inconforme, el 28 de agosto de 2025, Pro Auto presentó el recurso de epígrafe, mediante el cual planteó los siguientes señalamientos de error:

> PRIMER ERROR: El TPI cometió error al declarar con lugar la moción de sentencia sumaria parcial cuando los hechos materiales no controvertidos que enumeró en la sentencia no justifican la rescisión del contrato de compraventa entre Pro Auto y el apelado sino que por el contrario, justifican la desestimación de la demanda.
>
> SEGUNDO ERROR: El TPI se equivocó al hacer determinaciones de hechos en la sentencia sumaria parcial, que no están contenidas en la moción presentada por el apelado y al acoger aquellas que no cumplen con los requerimientos de forma establecidos por la Regla 36 de las de Procedimiento Civil.

El 3 de septiembre de 2025, emitimos una *Resolución* concediéndole a la parte recurrida el término dispuesto

---

[8] *Escrito en Cumplimiento de Orden entrada #61 de SUMAC y en Oposicion a Moción de Reconsideración Entrada #60 de SUMAC*, entrada núm. 63 en SUMAC.
[9] *Resolución Interlocutoria*, entrada núm. 69 en SUMAC.

en nuestro Reglamento, para que presentara su alegato en oposición.

El 29 de septiembre de 2025, el señor Jusino su *Oposición a Alegato de Apelación*. En esencia, argumentó que el foro primario actuó correctamente al declarar con lugar su moción de sentencia sumaria, puesto que, la prueba acreditó la inexistencia de una controversia real que justificara la rescisión del contrato.

Con el beneficio de la comparecencia de las partes, procedemos a atender el recurso de epígrafe.

**II.**

**-A-**

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Véase, además: *Rivera et als. v. Arcos Dorados*, 212 DPR 124 (2023); *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare*, LLC, 194 DPR 723, 728-729 (2016). Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.*; *IG Builders et al v. BBVAPR*, 185 DPR 307, 337-338 (2012).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, delimita expresamente las instancias en las que el Tribunal de Apelaciones puede expedir los recursos de *certiorari* para revisar resoluciones y órdenes interlocutorias del foro de Instancia. *800 Ponce de*

*León Corp. v. American International Insurance*, supra; *Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478, 487 (2019). En lo pertinente, la referida regla dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari*, en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. 32 LPRA Ap. V, R. 52.1

Aun cuando al amparo del precitado estatuto adquirimos jurisdicción sobre un recurso de *certiorari*, la expedición del auto y la adjudicación en sus méritos es un asunto discrecional. No obstante, tal discreción no opera en el abstracto. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008).

La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari*, a saber:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para analizar el problema.
>
> C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd*. Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle Albello,* 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

**-B-**

La Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V, provee para que en un pleito en el que figuren partes múltiples o en el que existan varias reclamaciones, tal como una reconvención, un tribunal pueda emitir una sentencia parcial en cuanto a una o más partes o

reclamaciones, sin disponer de la totalidad del pleito. Cuando en la sentencia así emitida el tribunal concluya expresamente que no existe razón para posponer dictar sentencia sobre tales partes hasta la resolución total del pleito, y se ordene expresamente su registro, se considerará una sentencia final para todos los fines en cuanto a las reclamaciones o los derechos y las obligaciones en ella adjudicadas. *US Fire Ins. v. AEE*, 151 DPR 962, 968 (2000).

Es norma reiterada que para que una resolución o sentencia parcial sea considerada final o definitiva, esta debe resolver todas o algunas de las reclamaciones completamente, de manera que sobre lo así adjudicado no quede pendiente nada más que su ejecución. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 94 (2008); *Cárdenas Maxán v. Rodríguez González*, 119 DPR 642, 655 (1987). Asimismo, la Regla 42.1 de Procedimiento Civil, 32 LPRA Ap. V, establece que el término *"sentencia"* incluye cualquier determinación del tribunal de instancia que resuelve finalmente la cuestión litigiosa y de la cual puede interponerse un recurso de apelación.

Lo importante para determinar el alcance y los efectos de un dictamen no es el título con el que se le denomine. Tampoco ha de ser el único criterio para determinar tales efectos el que el foro sentenciador haya utilizado literalmente la terminología dispuesta en la Regla y en la jurisprudencia. Para establecer el carácter final de una determinación judicial se hace imperativo examinar, además, si esta verdaderamente puso fin a la reclamación entre las partes mediante una adjudicación final. De lo contrario, estaríamos ante una resolución interlocutoria, la que, distinto a una

sentencia, es revisable ante este Tribunal únicamente mediante el recurso discrecional de certiorari, conforme a los criterios y el término de cumplimiento estricto que las Reglas 52.1 y 52.2 de Procedimiento Civil establecen, respectivamente. 32 LPRA Ap. V, R. 52.1 y 52.2; *US Fire Ins. v. AEE*, supra, págs. 968-969.

Si el Tribunal de Primera Instancia denomina su dictamen "*sentencia parcial*", pero no hace constar en su texto que no existe razón para posponer tal decisión ni ordena su registro y notificación, aunque adjudique definitivamente una reclamación capaz de dilucidarse concluyentemente de esa manera, no estamos ante una sentencia final, sino igualmente una resolución interlocutoria, que solo es revisable mediante la expedición del auto discrecional del *certiorari*. *Torres Martínez v. Torres Ghigliotty*, supra, pág. 96.

–C–

La moción de sentencia sumaria es un mecanismo procesal que permite la ágil disposición de casos sin la celebración de un juicio, siempre que no existan controversias genuinas de hechos materiales. *Birriel Colón v. Supermercado Los Colobos*, 213 DPR 80 (2013); *Segarra Rivera v. International Shipping Agency, Inc.*, 208 DPR 964, 979 (2022). El propósito de esta moción es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico*, 212 SPR 335 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 335 (2021). Procede su concesión "cuando surge claramente que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y el Tribunal cuenta con la verdad de

todos los hechos necesarios para resolver la controversia." *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *Mejías v. Carrasquillo*, 185 DPR 288, 299 (2012).

La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R.36.1, permite que una parte presente una solicitud de sentencia sumaria respaldada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). En ese sentido, "un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable." *Íd.*, pág. 213; citando a Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, Pubs. JTS, 2000, T.I, pág. 609.

A esos fines, la Regla 36.3 de Procedimiento Civil, *supra*, establece los requisitos de forma para la moción que se inste y su respectiva oposición. *Universal Insurance Company v. ELA*, 211 DPR 455, 472 (2023). El precitado cuerpo reglamentario preceptúa las formalidades que debe exhibir una moción de tal naturaleza: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en

evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3(a).

En tales escenarios, la parte opositora de la sentencia sumaria "tiene que cumplir con los requisitos de la Regla 36 de Procedimiento Civil." *Oriental Bank v. Caballero García*, supra. No debe adoptar "una actitud pasiva y descansar en las aseveraciones o negaciones que consigne en su alegación." *Íd*. Por tanto, enumerará los hechos materiales de buena fe controvertidos y aquellos sobre los que no media controversia. *Íd*. También, indicará los párrafos o páginas de la prueba documental que establezcan o impugnen cada hecho. *Íd*. Además, identificará "los argumentos del derecho aplicable por los cuales no se debe dictar la sentencia." *Fernández Martínez v. RAD-MAN San Juan*, supra, pág. 336. Ahora bien, cualquier duda no es suficiente para derrotar una moción de sentencia sumaria. *Oriental Bank v. Caballero García*, supra; *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.*, pág. 214.

Para determinar si existen controversias de hechos, "el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como los que obren en el expediente del tribunal." *Ramos Pérez v. Univisión*, supra, pág. 210; *Cruz Marcano v. Sánchez*

*Tarazona,* 172 DPR 526, 550 (2007). En cuanto a los documentos presentados, éstos deben analizarse de la forma más favorable para la parte promovida, concediéndole a ésta el beneficio de toda inferencia razonable que se pueda derivar de ellos. *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 734 (1994); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986).

En el proceso de disponer de una solicitud de sentencia sumaria, el juzgador no podrá tomar en consideración una declaración jurada suscrita por la parte adversa si su contenido es claramente incompatible con una versión de los hechos brindada anteriormente y el exponente no clarifica, a satisfacción del tribunal, la discrepancia entre las dos posiciones. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 440 (2013). En estas instancias opera un análisis bajo la doctrina de sham affidavit. Según el Tribunal Supremo de Puerto Rico, esta normativa aplica cuando:

> (1) [U]na parte ha sido examinada mediante preguntas precisas y libres de ambigüedad y ha respondido en detalle durante una deposición o ha prestado previamente una declaración clara e inequívoca bajo juramento; (2) al momento de oponerse a la solicitud de sentencia sumaria esa parte presenta una declaración posterior cuyo contenido es claramente incompatible con la versión ofrecida; (3) la incompatibilidad entre las dos declaraciones resulta evidente, manifiesta o patente, y no se trata de meras discrepancias de poca transcendencia o errores de buena fe; (4) no se ofrece explicación adecuada para la nueva versión, y (5) la declaración posterior no responde al descubrimiento de nueva evidencia, la cual a pesar de una diligencia razonable, no pudo descubrirse o no estuvo disponible al momento en que se prestó la declaración previa incompatible. *Lugo Montalvo v. Sol Meliá Vacation Club*, 194 DPR 209, 221-222 (2015); *SLG Zapata Rivera v. JF Montalvo,* supra, págs. 440-442.

En ese sentido, el tribunal rechazará una declaración subsiguiente si la inconsistencia entre las dos declaraciones resulta evidente y no se ofrece una explicación adecuada para la nueva versión. *SLG Zapata Rivera v. JF Montalvo*, supra, págs. 440-441. De igual modo, no es permisible la utilización de este subterfugio para que una parte se retracte de su testimonio bajo juramento con el fin de evitar dictar sentencia sumaria contrario al objetivo de la Regla 36 de Procedimiento Civil. *Íd*. pág. 441.

Por otro lado, no es recomendable emplear el mecanismo sumario en aquellos casos en los cuales median elementos subjetivos de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia. *Segarra Rivera v. International Shipping Agency, Inc*., supra, pág. 980; *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301 (1994). No obstante, amerita su concesión "si el juzgador queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y que una vista en los méritos es innecesaria." *Birriel Colón v. Supermercado Los Colobos*, supra; *SLG Fernández-Bernal v. RAD-MAN et al*., supra, pág. 337.

De otra parte, nuestro esquema procesal permite solicitar una sentencia sumaria por insuficiencia de la prueba. *Ramos Pérez v. Univisión*, supra, pág. 218; *Pérez v. El Vocero de PR,* 149 DPR 427, 447 (1999). Cuando el reclamante "no cuenta con evidencia suficiente para probar un elemento esencial de su caso sobre el cual tiene el peso de la prueba, procede que se dicte sentencia sumaria para desestimar la demanda*." Medina v. MS & D. Química PR, Inc*., pág. 728. En tal escenario,

el promovente debe demostrar que: (1) la vista es innecesaria; (2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial, y (3) como cuestión de derecho, procede la desestimación de la reclamación. *Ramos Pérez v. Univisión*, supra, pág. 218.

En síntesis, el tribunal debe abstenerse a otorgar este remedio cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico*, supra; *Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 335-336.

**III.**

En primer lugar, es preciso destacar que la determinación recurrida no constituye una sentencia sumaria parcial, debido a que, el foro primario no incluyó las palabras requeridas por la Regla 42.3 de Procedimiento Civil, *supra*, para darle finalidad al dictamen. Así pues, debemos concluir que el dictamen impugnado es una resolución interlocutoria que no culmina el pleito en su totalidad, por lo cual acogemos el presente como un recurso discrecional de *certiorari*.

En el caso de autos, en esencia, la parte peticionaria alega que indició el foro primario al declarar con lugar la moción de sentencia sumaria parcial, aun cuando no se justificaba la rescisión del contrato de compraventa, sino que procedía la desestimación de la demanda. A su vez, arguye que erró el foro primario al realizar determinaciones de hechos

que no estaban incluidas en la moción instada por el recurrido.

No obstante, la parte peticionaria no logró demostrar que el foro *a quo* haya cometido algún error de derecho, ni que haya mediado prejuicio, parcialidad o error craso o manifiesto, que amerite nuestra intervención. Por ello, ejercemos nuestra discreción y, al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, denegamos la expedición del presente auto de *certiorari.*

## IV.

Por los fundamentos antes expuestos, **DENEGAMOS** el auto de *certiorari*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones